IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA MARRIOTT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1307 |
| | ) | |
| AUDIOVOX CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM ORDER

CONTI, District Judge.

Pending before the court is a motion for summary judgment (Doc. No. 18) filed by

defendant Audiovox Corporation ("Audiovox" or "defendant").  Sandra Marriott ("Marriott" or

"plaintiff") filed this civil action alleging discriminatory employment practices, sex

discrimination and wage discrimination.

Plaintiff's complaint contains two counts.  Count one asserts six federal claims – two

arising under the Equal Pay Act, 29 U.S.C. §§ 206 *et seq.*, ("Equal Pay Act") and four arising

under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title

VII").  Count two asserts four state law claims arising under  the Pennsylvania Human Relations

Act, 43 PA. CONS. STAT. ANN. §§ 951 *et seq.* ("PHRA"), which are similar to the four claims

raised in count one under Title VII.  The claims raised by plaintiff are:  1) under the Equal Pay

Act, that defendant paid her less than a male comparator for performing "work of substantially

equal skill, effort and responsibility, under similar working conditions;"[1] 2) under the Equal Pay

Act, that defendant retaliated against her by firing her after she complained about the inequity in

_____

[1] Stanziale v. Jargowsky, 200 F.3d 101 (3d Cir. 2000).

pay; 3) under Title VII and the PHRA, defendant discriminated against her on the basis of sex in the form of failure to promote; 4) under Title VII and the PHRA, defendant discriminated against her on the basis of sex by reason of wrongful termination; 5) under Title VII and the PHRA, defendant discriminated against her on the basis of sex by reason of a hostile work environment and 6) under Title VII and the PHRA, defendant retaliated against her by firing her after she complained about the failure to promote her.

Defendant moves for summary judgment in its favor with respect to all claims raised by plaintiff. Summary judgment will be granted in favor of defendant on the hostile work environment claims under Title VII and the PHRA because the undisputed material facts of record show that plaintiff cannot prove a prima facie case for those claims. Summary judgment will be denied with respect to all other claims by reason of genuine issues of material fact being in dispute.

### Factual Background

The factual background is derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Plaintiff was employed by defendant[2] as an "agent manager" from May 2002 through July 9, 2003. Joint Statement of Facts ("J.S.") ¶ 1. Her salary was $26,000 per year, plus

---

[2] Defendant contends that plaintiff was employed by Quintex Mobile Communications Corporation ("Quintex"), which is a wholly owned subsidiary of Audiovox. The parties disagree about the proper name of the employer. Every time plaintiff refers to Audiovox, defendant disputes that Audiovox was the employer.

commissions based on a performance factor.  Id. ¶ 3.  On May 13, 2002, defendant hired Ed

Winklarek ("Winklarek") at a higher salary.  Id. ¶ 2.  Winklarek was paid $40,000 per year, plus

commissions with no performance factor.  Id. ¶ 4.  Plaintiff complained about the salary

discrepancy in June 2002, but her salary did not change.[3]  Id. ¶ 5.  Winklarek was "promoted" to

general manager on May 1, 2003.  J.S. ¶ 7.  Plaintiff was discharged on July 9, 2003, and

Winklarek was retained as an employee.  Id. ¶ 8.  On July 28, 2003, plaintiff filed a

discrimination complaint with the Equal Employment Opportunity Commission (the "EEOC")

and the Pennsylvania Human Relations Commission (the "PHRC").[4]  Id. ¶ 6; Ex. A.

From approximately October 2000 through May 1, 2003, Bill Funovits ("Funovits") was

the general manager of the Pittsburgh area cellular division of Audiovox.[5]  Id. ¶ 9.  Prior to

October 2000, Funovits' position was president and general manager of the cellular division of

Audiovox in Pittsburgh.[6]  Id. ¶ 10.  In approximately October 2000, Funovits purchased the retail

automotive operations of Audiovox in the Pittsburgh area and was retained as general manager of

---

[3] Plaintiff alleges that she made multiple complaints regarding the salary discrepancy through June 2003.  Id.

[4] On May 17, 2004, after nearly ten months of investigation, the EEOC issued a determination that the evidence obtained during the investigation established a violation of Title VII and the Equal Pay Act.  The EEOC also determined that an unalleged violation of retaliation occurred when Audiovox denied plaintiff the opportunity to apply for the general manager position after she complained about the pay discrepancy.  J.S. ¶ 63; Ex. P-3.

[5] Defendant claims that Funovits was the general manager of the Pittsburgh operations of Quintex.  Id.; Exhibit B at 16, 89.

[6] Defendant again associates Funovits with Quintex.  Id.; Ex. B at 30.

Audiovox's cellular division in the Pittsburgh area.[7]  Id. ¶ 11.

After the transition in or about October 2000, Funovits reported to Aris Constantinides ("Constantinides") in New York.  Id. ¶ 14; Ex. B at 30.  Prior to this time, Funovits and Constantinides had been peers.  Id. ¶ 15; Ex. B at 30.  After the transition, Constantinides and Chris Christopero ("Christopero") were Funovits' New York contacts with respect to decision making for the Pittsburgh operations.  Id.  Funovits no longer had decision making abilities with respect to employees' salaries, nor did he have the authority to discipline employees.  Id. ¶ 16; Ex. B at 33, 65.

At the time of the transition, Audiovox had two sales persons in the Pittsburgh area other than plaintiff: Daniel Brienza ("Brienza") and Gary Stepanic ("Stepanic").  Id. ¶ 12; Ex. B at 23. Their salaries were comparable to plaintiff's salary.  Id. ¶ 13; Ex. B at 32.  During Funovits' negotiations for the purchase of the retail division of Audiovox, Constantinides instructed him to terminate Stepanic and Brienza and retain plaintiff.  Id.; Ex. B at 36.  After October 2000, plaintiff was given the primary responsibility for managing subagents.  Id. ¶ 20; Ex. P at 1, 36, 37, 126, 127.

In May 2002, Ed Winklarek was hired without having any prior experience in the cellular industry.  J.S. ¶ 21, 23; Ex. B at 51.  Winklarek had little management experience at the time Audiovox hired him, and had not operated any business comparable to that of Audiovox's wireless division.[8]  J.S. ¶ 24, 46; Ex. P at 1, 51; Ex. B at 5, 17, 21.

---

[7] Defendant refers to Funovits as having purchased the retail division of Audiovox and having been retained as general manager for Quintex's cellular division.  Id.; Ex. B at 15,16.

[8] Plaintiff alleges that she had over ten years retail and wholesale experience at the time Winklarek was hired.  Id.

Winklarek was initially hired by Audiovox in May 2002 as a subagent manager to assist plaintiff in securing new subagent accounts for the Quintex Cellular Division of Audiovox.  J.S. ¶ 44.  Christophoro and Constantinides informed Funovits that Winklarek was to perform the same duties as plaintiff and receive the same salary.  J.S. ¶ 44.  Several other Audiovox employees were also told that Winklarek was to be plaintiff's assistant and share her duties.  J.S. ¶ 44; Ex. P-1 at 54, 58, 59, 131-134; B-5, B-17, B-21.

After approximately September 2002, Christophoro and Constantinides hired three or four male direct sales people to work for Audiovox in Pittsburgh.  J.S. ¶ 26; Ex. P at 1, 51, 52, 61, 62.  Around that time, another retail location was opened and Winklarek reported to that location and had little contact with Funovits thereafter.  J.S. ¶ 27; Ex. B at 61-62.  The direct salespeople hired by Winklarek were Adam Reeping ("Reeping"), Dan Castleforte ("Castleforte"), and Chris Clover ("Clover").  J.S. ¶ 28; Ex. B at 62.  Reeping, Castleforte, and Clover were earning a base salary of $18,000 per year.  J.S. ¶ 29; Ex. C.

Shortly after Winklarek was hired, Funovits learned that Winklarek was being paid more than plaintiff and complained to Christophoro.  J.S. ¶ 30; Ex. B at 67.  Funovits complained to Neil Levine ("Levine") and Constantinides.  J.S. ¶ 30; Ex. P-1 at 67, 68, B at 5, 7,21.  At the time Funovits made his complaints to Christophoro, Levine, and Constantinides regarding Winklarek's salary, Funovits's total compensation exceeded Winklarek's compensation, but Winklarek before 2000 was in effect being paid a higher base salary than Funovits because Winklarek was being paid a guaranteed commission factor.  J.S. ¶ 31 at P-1 at 62, 70, 71.  Plaintiff believes that sexual discrimination motivated the large disparity in pay between Winklarek and her.  J.S. ¶ 50; Ex. P-1 at 133, 134.

5

In mid-May 2003, plaintiff learned that Winklarek was being promoted to general manager.  J.S. ¶ 37; Ex. P-2 at 48, 49.  Winklarek's management experience included experience as a manager of various maintenance and installation operations for cable television services. J.S. ¶ 58; Def.'s Ex. C, F.  Plaintiff's prior management experience involved overseeing salespeople and subagent business, and it included helping in establishing three retail stores and programs and procedures in those stores and designing one of the locations.[9]  J.S. ¶ 34; Ex. P-1, P-12.

The day-to-day activities that both Winklarek and plaintiff performed were the same from October 2002 to the time of his promotion to general manager.  J.S. ¶ 33; Ex. P-1 at 61, 78, 79. Prior to approximately mid-May of 2003, Winklarek and plaintiff were provided by Audiovox with identical business cards, indicating the title of agent manager.  J.S. ¶ 57; Ex. P-2 at 84.

Defendant eventually terminated plaintiff allegedly due to declining sales.[10]  J.S. ¶ 42; Ex. D at 71.  Plaintiff, however, believes that the termination resulted from sexual discrimination because she claims there was not a single legitimate business reason for her termination while Winklarek was retained.[11]  J. S. ¶ 50; Ex. P-1 at 133, 134.  To support her claim that there was no

---

[9] Plaintiff's management experience did not include setting budgets for retail stores, handling inventory, making the decision to open the retail stores for Quintex, negotiating the leases, or evaluating the profitability of each location.  J.S. ¶ 35; Ex. D at 9-13.  She did not set the salaries for the sales staff, and she was not responsible for advertising for the retail stores. J.S. ¶ 36; Ex. D at 26.

[10] Plaintiff agrees that after Christophoro and Constantinides took over the Pittsburgh operations, they had concerns about declining business in Pittsburgh.  J.S. ¶ 39; Ex. D at 52.  She believes that the New York management was the cause of the decline in business.  J.S. ¶ 40; Ex. D at 52.

[11] Plaintiff admits that during her time employed by Audiovox, she did not know either Constantinides or Christophoro well enough to know whether they had discriminatory attitudes

legitimate business reason for her dismissal she adduces evidence that a less experienced male was promoted to plaintiff's position and two less experienced male sales persons were retained even though plaintiff's sales vastly outnumbered those of Winklarek, her male replacement, and the two male sales persons combined.[12] J.S. ¶ 52; Ex. P-2 at 73, 74, 78; Ex. P-4; Ex. P-7.  At the time of plaintiff's termination in 2003, plaintiff points to evidence that most of the income generated by Audiovox's Pittsburgh wireless operation was coming from subagent sales business and that more than 90 percent of the subagents generating income for Audiovox's Pittsburgh wireless operation were subagents acquired and maintained by plaintiff.  J.S. ¶ 60; Ex. P-2, P-1, B-5, B-17, B-21; J.S. ¶ 61; Ex. P-4.  Plaintiff received several rewards for her retail and wholesale sales figures, which facts were known to Constantinides, Christophoro and Phillip Christopher ("Christopher"), an officer of Audiovox, since all three were present at the awards ceremonies at which the awards were presented.  J.S. ¶ 55; Ex. P-2 at 78, 79; Ex. P-9, 12. During the relevant period of plaintiff's employment by Audiovox, there were no women other than her in the position of sales representative or agent manager, nor were there any women in the position of general manager.  J.S. ¶ 53; Ex. P-1 at 127, 128; P-2 at 79-81.

Plaintiff complained to Funovits that Winklarek had been retained because of Christopero's relationship with Winklarek's brother.  J.S. ¶ 52; Ex. B at 117.  In June 2003, plaintiff made a discrimination complaint to Audiovox's human resources department relative to

toward women.  J.S. ¶ 54; Ex. P-2 at 51.

[12] Plaintiff's position as agent manager was filled by Reeping who plaintiff alleges was employed by Audiovox for less than one year, and who had been responsible for only 10 activations during all of 2003, whereas plaintiff had secured 1,675 sub-agent activations during the first seven months of 2003 alone.  J.S. ¶ 57; Ex. P-2 at 84, 85; Ex. P-4 at 7, 15.

the pay inequity and Winklarek's promotion.  J.S. ¶ 52; Ex. P-2 at 74, 78; Ex. P-4; Ex. P-7.

Plaintiff, in June 2002, had also complained to Christopher that her dissatisfaction with

Audiovox was based on its treatment of female employees.  Id.

### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if,

drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  FED.R.CIV.P. 56(c).  A motion for summary judgment will not be defeated by the

mere existence of some disputed facts, but will be defeated when there is a genuine issue of

material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In determining

whether the dispute is genuine, the court's function is not to weigh the evidence or to determine

the truth of the matter, but only to determine whether the evidence of record is such that a

reasonable jury could return a verdict for the nonmoving party.  Id. at 249.  The court may

consider any material or evidence that would be admissible or usable at trial in deciding the

merits of a motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing

WRIGHT AND MILLER, FEDERAL PRACTICE § 2721); Pollack v. City of Newark, 147 F.Supp. 35,

39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957), cert.denied, 355 U.S. 964 (1958) ("in

considering a motion for summary judgment, the court is entitled to consider exhibits and other

papers that have been identified by affidavit or *otherwise made admissible in evidence*")

(emphasis added).

**Discussion**

Defendant moves for summary judgment on all six of plaintiff's claims asserted under federal law and on all plaintiff's claims asserted under the PHRA. Each federal claim will be discussed. Plaintiff's PHRA claims are analyzed under the same framework as Title VII. <u>See</u> <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 919 (3d Cir. 1997) (applying Title VII analysis to PHRA claim). The parties did not separately discuss or brief the PHRA claims. The discussion and disposition of plaintiff's Title VII claims will apply to the related PHRA claims and will be granted or denied in the same manner as the Title VII claims. Each federal claim will be separately discussed.

I.     **Equal Pay Act Claims**

A.  <u>**Pay Inequity**</u>

The Equal Pay Act provides in relevant part:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

The purpose of the Equal Pay Act was described by the Supreme Court in <u>Corning Glass</u>

9

Works v. Brennan, 417 U.S. 188 (1994), as follows:

> Congress' purpose in enacting the Equal Pay Act was to remedy what was
> perceived to be a serious and endemic problem of employment
> discrimination in private industry – the fact that the wage structure of
> "many segments of American industry has been based on an ancient but
> outmoded belief that a man, because of his role in society, should be paid
> more than a woman even though his duties are the same". . . .   The
> solution adopted was quite simple in principle: to require that "equal work
> will be rewarded by equal wages."

Id. at 195 (quoting S. Rep. No. 176, 88th Cong., 1st Sess., 1 (1963)).

In discussing whether or not the work is equal, the United States Court of Appeals for the

Third Circuit in Brobst v. Columbus Services Intern., 761 F.2d 148 (3d Cir. 1985), commented

that that factor could be established "by proving actual job content; by the same token the

employer may not rely merely on the job description."  Id. at 155.  The court of appeals also

stated:

> All the courts have agreed that the test is whether the work is
> "substantially equal". . . .
> The crucial finding on the equal work issue is whether the jobs to be
> compared have a "common core" of tasks, i.e., whether a significant
> portion of the two jobs is identical. The inquiry then turns to whether the
> differing or additional tasks make the work substantially different. . . .
> Given the fact intensive nature of the inquiry, summary judgment will
> often be inappropriate.

Id. at 156 (emphasis added and citations omitted).

There are three elements to a claim under the Equal Pay Act: 1) the defendant employed

the plaintiff and a male employee in jobs requiring substantially equal skill, effort and

responsibility; 2) the two jobs were performed under similar working conditions; and 3) the

plaintiff was paid a lower wage than the male employee doing substantially equal work. Corning

Glass Works, 417 U.S. at 195.  There are four[13] exceptions which, if applicable and proven by the employer, will justify the wage differential.  The exceptions are "a matter of affirmative defense on which the employer has the burden of proof."  Id. at 197.  Under the Equal Pay Act, the plaintiff does not have to prove intent to discriminate.  EEOC v. Delaware Dept. of Health and Social Services, 865 F.2d 1408, 1414 n.8 (3d Cir. 1989).

With respect to the first element, in determining whether the jobs require substantially equal skill, effort and responsibility, it is the jobs that are compared and not the individual employees that perform the jobs.  The jobs do not need to be identical.  The proof required is that substantially equal skill, effort and responsibility are involved in the performance of the jobs in issue.  The name or classification of the job is not controlling.  The work actually done is what is important.  Brobst, 761 F.2d at 155.

With respect to skill, the levels of education, experience, training and ability necessary to meet the performance required are what is considered.  In Welde v. Tetley, Inc., 864 F.Supp. 440 (M.D. Pa. 1994), the court discussed the term "skill" and noted that it encompasses factors such as "experience, training and ability."  Id. at 442 (citing 29 C.F.R. § 1620.15).  With respect to effort, it is the mental, physical and emotional requirements related to the performance of the specific job that are important.  It is not required that the effort has to be utilized in the same manner.  In Welde, the district court also noted that effort "refers to the physical or mental exertion needed to perform a job."  Id. (citing 29 C.F.R. § 1620.16).

---

[13]"(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. . . ."  29 U.S.C. § 206(d)(1).

In assessing responsibility, the matters taken into account include the degree of accountability expected by the employer, the amount of preparation required to perform the job, the level of authority delegated to the plaintiff as compared to male employee, and the consequences to the employer with respect to the performance of the jobs.  EEOC v. State of Delaware, Dept. of Health and Social Services, 865 F.2d 1408, 1415 (3d Cir. 1989).  "'Responsibility' concerns the degree of accountability required in performing a job, with emphasis on the importance of the job obligation."  Welde, 864 F.Supp. at 442.  Each of these factors – skill, effort and responsibility –  are "separate tests . . .  which must be met in order for the equal pay standard to apply."  Id. (citing 29 C.F.R. § 1620.17).

With respect to the second element – similar working conditions – proof that the conditions are identical is not required.  See Corning Glass Works v. Brennan, 417 U.S. 188 (1974) (jobs could be equal even if males worked night shift and females worked day shift); EEOC v. State of Delaware Dept. of Health and Social Services, 865 F.2d 1408 (3d Cir. 1989). The third element requires proof that a lower wage was paid to the plaintiff than to the male employee.  Fringe benefits, etc., are to be included in the comparison of wages. See 29 C.F.R. § 1620.10.

If a prima facie case is shown, then the burden shifts to the defendant to show one of the exceptions set forth in the Equal Pay Act applies, i.e., "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production;  or (iv) a differential based on any other factor other than sex. . . ."  29 U.S.C. § 206(d)(1); see EEOC v. Delaware Dept. of Health and Social Services, 865 F.2d 1408, 1414 (3d Cir. 1989).

The gist of defendant's argument in this case is that the undisputed facts arguably show

that plaintiff and the male employee at issue here, Winklarek, were not performing equal work. Defendant argues that Winklarek was hired as a branch manager in 2002 and it was the intention of defendant to have him become the general manager and replace Funovits which Winklarek did in 2003.  Defendant argues that Winklarek's job was not similar to plaintiff's job.  Plaintiff, however, correctly notes that the disputed facts have to be viewed in a light favorable to the nonmoving party.  When the court does so, the court cannot find that defendant is entitled to judgment as a matter of law.

At least for the period from the time Winklarek was initially hired – May 13, 2002 – until Winklarek was promoted to general manager on May 1, 2003, approximately a one-year period, plaintiff adduced evidence that Winklarek and she were managing subagents and she also adduced evidence that Funovits, her manager, was told that Winklarek would perform the same duties as plaintiff.  Further, the business cards of Winklarek and plaintiff contained the title of "agent manager."  In addition, other Audiovox employees were told that Winklarek would be sharing plaintiff's duties.  Based upon that evidence, a reasonable jury could find, despite defendant's evidence that Winklarek was hired as a branch manager, that Winklarek was performing work that was substantially equal to plaintiff's work.  Plaintiff provided evidence that equal skills were involved in the two jobs, i.e., managing subagents, and that the effort and responsibilities with respect to the management of subagents and activation of accounts were substantially the same.  As noted, the name and classification of the job is not controlling, it is the work being done.  The court concludes that there is sufficient evidence in the record for a jury to find that the plaintiff met her burden with respect to the first element of the claim under the Equal Pay Act.

The second element is whether the two jobs were performed under similar working conditions.  The evidence adduced with respect to the nature of the work performed reflects that the working conditions for Winklarek and plaintiff were similar.  They both worked in the Pittsburgh division and each had subagents reporting to them.  The court concludes that the plaintiff has adduced sufficient evidence to establish the second element of the Equal Pay Act claim for the purposes of deciding summary judgment.

The final issue is whether the plaintiff was paid a lower wage than Winklarek.  It is undisputed that plaintiff's salary was lower than Winklarek's, i.e., plaintiff's base pay was $26,000 per year plus commissions based on a performance factor and Winklarek was paid $40,000 per year plus commissions with no performance factor.  Thus, plaintiff adduced sufficient evidence to establish the third element for an Equal Pay claim.

Defendant also argues that there was a differential other than sex for the differential in pay and that it can meet its burden to prove one of the exceptions provided in the Equal Pay Act exists in this case.  Defendant's evidence, however, is the evidence which was disputed by plaintiff with respect to whether the work being performed by plaintiff and Winklarek was substantially similar.  Defendant argues that Winklarek was a branch manager and was to become general manager replacing Funovits.  Here, plaintiff has adduced evidence that Winklarek was not hired as a branch manager, i.e., Winklarek and plaintiff were each managing subagents, the statements made to Funovits and other employees that Winklarek was an agent manager, and the business cards reflecting Winklarek's title as agent manager – the same title held by plaintiff.  Given that the court in deciding summary judgment must view any disputed evidence in a light favorable to the nonmoving party, defendant cannot establish that it has met

14

its burden of proof with respect to the exception as a matter of law.  The court, therefore, finds that summary judgment cannot be granted in favor of defendant with respect to the Equal Pay Act.

### B. Retaliation

The United States Court of Appeals for the Third Circuit has not yet considered whether a plaintiff can assert a claim for retaliation under the Equal Pay Act for adverse actions taken after an informal complaint concerning pay inequity is made.  Other courts of appeals and district courts within the Third Circuit have found that a retaliation claim based upon that situation can arise under the Equal Pay Act.  Section 215(a)(3) of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), authorizes claims for retaliation under the Equal Pay Act.  That section makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this [act], or has testified or is about to testify in any such proceeding. . . ."  29 U.S.C. § 215(a)(3).  Clearly, if a formal complaint has been filed and adverse action is taken in retaliation for the formal action, a retaliation claim could be established under the Equal Pay Act.  The relevant inquiry in this case, however, is whether an informal complaint such as making a complaint to a defendant's human relations department is sufficient.  As noted, the United States Court of Appeals for the Third Circuit, has not resolved that issue.

In EEOC v. Romeo Community Schools, 976 F.2d 985 (6th Cir. 1992), the United States Court of Appeals for the Sixth Circuit found that an oral complaint to an employer was sufficient to permit a claim to be filed under section 215(a)(3).  See Valerio v. Putnam Assocs. Inc., 173 F.3d 35 (1st Cir. 1999); Lambert v. Ackley, 180 F.3d 997 (9th Cir. 1999); Love v. RE/MAX of

America, Inc., 738 F.2d 383 (10th Cir. 1984).  The application of section 215(a)(3) to informal

complaints was recognized in Dougherty v. Ciber, Inc., 2005 WL 2030473 at *3 (M.D. Pa.

2005).  The district court in Dougherty noted:

> [T]he United States Court of Appeals for the Third Circuit has instructed
> that the language of the anti-retaliation provision should be construed
> liberally.  Brock v. Richardson, 812 F.3d 121, 123-24 (3d Cir.1987)(citing
> Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590,
> 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944) (holding that the remedial
> provisions of the Fair Labor Standards Act "must not be interpreted or
> applied in a narrow, grudging manner")).

Id.; see Chennisi v. Communications Constr. Group, 2005 WL 387594, at *2-3 (E.D. Pa. Feb. 17,

2005) ("an internal complaint to an employer regarding a violation of the FLSA is a protected

activity under § 215(a)(3)" and "falls within the meaning of 'filed any complaint' as required by

§ 215(a)(3) of the FLSA").  The district court in Dougherty concluded that informal complaints

to an employer are sufficient to establish a claim for retaliation under the Equal Pay Act.  This

court will likewise find an informal complaint to an employer to be sufficient.

The elements a plaintiff must prove to establish a retaliation claim in situations where no

formal complaint or proceeding was involved are: 1) the plaintiff engaged in a statutorily

protected activity, i.e., made an informal complaint to her employer under the Equal Pay Act; 2)

she was subjected to an adverse employment action after or contemporaneous with her protected

activity; and 3) a causal connection exists between the adverse employment action and the

protected activity.  See Ambramson v Wm. Patterson College of N.J., 260 F.3d 265, 286 (3d Cir.

2001); Dougherty, 2005 WL 2030473 at *2.

Defendant did not directly address this claim in its motion for summary judgment.

Defendant, however, did present arguments with respect to the complaints raised by plaintiff

16

regarding the failure to promote her.  Specifically, defendant argues that the timing of the retaliatory action was too distant to establish for the causal link required in the third element of a retaliation claim.  Plaintiff, however, has set forth evidence that she made an informal complaint to defendant's human resources department concerning the inequity in pay in June 2003.  Approximately thirty days later, on July 9, 2003, she was discharged.

The court has found that an informal complaint regarding inequality in pay is protected activity.  Thus, plaintiff's evidence with respect to her complaint to the human resources department in June 2003 is sufficient for the purposes of surviving summary judgment to establish the first element of a retaliation claim under the Equal Pay Act.  With respect to whether there was an adverse employment action, the termination of plaintiff is clearly an adverse employment action that happened after her protected activity.  Thus, plaintiff satisfied for the purposes of surviving summary judgment the second element of this retaliation claim.

The dispute with respect to the retaliation claim thus turns on whether plaintiff has demonstrated a causal link between the protected activity and the adverse action.  Whether a causal link exists requires the court to consider timing or evidence of ongoing antagonism.  Abramson v. Wm. Patterson College of N.J., 260 F.3d 265, 286 (3d Cir. 2001).  If the adverse action is sufficiently close to the protected activity, the temporal proximity may be sufficient to establish the causal link.  Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997).  Here, a period of approximately thirty days between the protected activity and the adverse action arguably is suggestive and perhaps even "unusually suggestive."  There is, however, other evidence in this case which can demonstrate the causal link connection with the timing.  See Farrel v. Planter's Life Savers Co., 206 F.3d 271 (3d Cir. 2000).  That type of evidence may

include evidence which casts doubt on the proffered reasons for her termination.  See Abramson,

260 F.3d at 289.  Here, plaintiff has adduced evidence that Winklarek was hired as an agent

manager despite defendant's assertions that he was hired as the branch manager.  Plaintiff has

also pointed to her work performance, including that ninety percent of the subagents working in

defendant's Pittsburgh operations were subagents acquired and maintained by plaintiff.  The

doubts raised with respect to the proffered reasons for the termination combined with the

suggestive timing are sufficient for this court to conclude, after viewing the evidence in a light

favorable to plaintiff, that plaintiff adduced sufficient evidence to establish the third element of

her prima facie claim for retaliation under the Equal Pay Act for the purposes of surviving

summary judgment.  The court cannot grant summary judgment in favor of defendant on this

claim.


## II.  Title VII and PHRA claims[14]

### A.  Legal Framework

Title VII was enacted to prohibit employers from discriminating against employees with

respect to compensation, terms, conditions, or privileges of employment.  Texas Dept. of Cmty.

Affairs v. Burdine, 450 U.S. 248, 259 (1981).  The Supreme Court recognized that it is often

difficult for a plaintiff to prove that an employer acted with "conscious intent to discriminate."

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  One manner in which plaintiffs can

---

[14]As noted previously, the Title VII analysis applies to the PHRA claims.  "We construe
Title VII and the PHRA consistently.  See Atkinson v. La Fayette College, 460 F.2d 477, 454 n.6
(3d Cir. 2006). . . ."  Scheidemantle v. Slippery Rock Univ., No. 05-3850, 2006 U.S. App.
LEXIS 31141, at n.5 (3d Cir. Dec.19, 2006).

meet this ultimate burden of persuasion is by demonstrating that an employer's stated reason for the challenged action is not the true reason, but rather was a pretext for unlawful discrimination. Burdine, 450 U.S. at 253.

In McDonnell Douglas, the Supreme Court developed the now familiar burden-shifting framework for courts to utilize as a tool in analyzing disparate treatment claims. The McDonnell Douglas framework requires a plaintiff alleging a violation of Title VII to first establish a prima facie case of discrimination. The prima facie case, the elements of which depend upon the kind of claim the plaintiff is alleging, "eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." Burdine, 450 U.S. at 254; see also id. at n.6. In so doing, "the prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" Id. The United States Court of Appeals for the Third Circuit recently recognized "there is a low bar for establishing a *prima facie* case of employment discrimination." Scheidemantle v. Slippery Rock Univ., No. 05-3850, 2006 U.S. App. LEXIS 31141, at n.5 (3d Cir. Dec.19, 2006).

If the plaintiff successfully demonstrates a prima facie case of discrimination, the burden of production (but not the burden of persuasion) shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. Simpson v. Kay Jewelers, 142 F.3d 639, 644 n.5 (3d Cir. 1998). The burden on the defendant at this junction is "relatively light," and the defendant can satisfy this burden "by introducing evidence which, *taken as true*, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision. . . . " Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis added) (citations omitted).

19

Once the defendant offers a legitimate nondiscriminatory reason for the challenged conduct at issue, "'the <u>McDonnell Douglas</u> framework - with its presumptions and burdens - disappear[s], . . . and the sole remaining issue [is] 'discrimination *vel non*,'. . . ." <u>Reeves v. Sanderson Plumbing Products., Inc.,</u> 530 U.S. 133 (2000) (citations omitted). The plaintiff, thus, has the ultimate burden of proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination. <u>Jones v. School Dist. of Philadelphia,</u> 198 F.3d 403, 410 (3d Cir. 1999).

With respect to meeting that ultimate burden, the plaintiff, in order to survive summary judgment, must meet one of the two-prongs articulated by the United States Court of Appeals for the Third Circuit in <u>Fuentes</u>:

> [T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

<u>Id.</u> at 764.

### 1.  Prong One

A plaintiff must submit evidence that could cause a reasonable factfinder to discredit the employer's articulated reason for the adverse employment action in order to overcome summary judgment and bring her case to trial. To discredit the employer's articulated reason, the plaintiff does not need to produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, <u>Sempier v. Johnson & Higgins,</u> 45 F.3d 724, 764 (3d Cir. 1995), nor produce additional evidence beyond her prima facie case. <u>Fuentes,</u> 32 F.3d at 764.

20

The plaintiff must, however, demonstrate such:

> "weaknesses, implausibilities, inconsistencies, incoherencies [sic], or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence'" and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action. [Fuentes, 32 F.3d] at 764-65 (quoting [Ezold v. Wolf, Block, Schorr, and Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)]).

Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998).

The question asked in prong one of the Fuentes test is not whether the employer made the best, or even a sound, business decision; it is whether the real reason for the adverse result suffered by the plaintiff is discrimination.  Keller v. ORIX Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997).

An employment decision that would create a problem under prong one will likely turn on whether the stated reason for termination is so implausible that a factfinder could not believe it to worthy of credence.  For example, in Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326 (3d Cir. 1995), the plaintiff was fired due to deficient sales performance.  The evidence of record, however, disclosed that the plaintiff received a bonus three months prior to his termination and that he was the only sales employee in his region to have received such a bonus.  The court held that, where the primary measure of the employee's performance was his sales, and where he was the leading salesperson in the region, the employer's stated reason for his termination was "contradictory to [its] admission that the most important standard of job performance is sales." Id. at 332.  According to the court, "[a] factfinder could find it implausible that Quaker State would have fired Brewer for such deficiencies when he was successful in the sole area identified by Quaker State's own performance incentive program - sales."  Id.

21

Sempier is another case in which an employer stated the plaintiff was terminated because of poor performance causing the company to restructure the nature of his responsibilities.  The evidence of record, however, disclosed that (1) the plaintiff never received any unfavorable criticism that his performance was poor or inadequate; and (2) the employer failed to produce any other evidence of poor performance or to make specific allegations of the plaintiff's deficiencies. Sempier, 45 F.3d at 731-33.  Thus, there was evidence on the record that a reasonable factfinder could conclude that the reason given in Sempier by the employer was a pretext for age discrimination.  Id. at 732-33.

### 2.  Prong Two

Under the second prong of the Fuentes framework to show that discrimination was more likely than not a cause for the employer's adverse actions, a plaintiff must point to evidence with sufficient probative force that could allow a factfinder to conclude by a preponderance of the evidence that the protected characteristic was a motivating or determinative factor in the employment decision.  Simpson, 142 F.3d at 644-45.  Relevant evidence that could be relied on in the evaluation of this prong includes: (1) whether the employer has previously discriminated against the plaintiff, (2) whether the employer has discriminated against other people within the plaintiff's protected class or within another protected class, or (3) whether the employer has treated more favorably similarly situated persons not within the protected class.  Id. at 645.

The United States Court of Appeals for the Third Circuit recognized that "[s]tatistical evidence of an employer's pattern and practice with respect to minority employment may be relevant to a showing of pretext."  Ezold v. Wolf, Block, Schorr, and Solis-Cohen, 983 F.2d 509, 542 (3d Cir. 1992).  The court of appeals, however, has also commented that raw numerical

22

evidence alone is of little value without a demonstration of its significance to the employer's alleged discriminatory motive.  Id.; Keller, 130 F.3d at 1112.

### B.  Failure to Promote Claim

A failure to promote claim is analogous to a claim of failure to hire.  Barber v. CSX Distribution Services, 68 F.3d 694, 698 (3d Cir. 1995).  In order to establish a prima facie case for failure to hire or promote based on sex discrimination, a plaintiff

> must show "that 1) [she] belongs to the protected class, 2) that [she] applied for and was qualified for the job, 3) that despite [her] qualifications [she] was rejected, and 4) that the employer either ultimately filled the position with someone [of the opposite sex] or continued to seek applicants from among those having plaintiff's qualifications."

Id. (quoting Fowle v. C & C Cola, 868 F.2d 59, 61 (3d Cir. 1989)).  With respect to the last requirement for a prima facie case, the United States Court of Appeals for the Third Circuit requires that an employee show that the failure to promote occurred "under circumstances which give rise to an inference of unlawful discrimination."  Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 357 (3d Cir. 1999).  The last requirement in that context necessitates a focus on whether there were circumstances in this case that give "rise to an inference of unlawful discrimination."  Id.

At the prima facie stage, the court views plaintiff's qualifications objectively, examining whether a plaintiff has the experience and education necessary to be a viable candidate for the position at issue.  See Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir.1995); Kepple v GPU, Inc., 2 F.Supp.2d 730, 741 (W.D.Pa 1998).  The requisite objective criteria regarding experience and education for a particular job are established by the employer.  Kepple v GPU,

Inc., 2 F.Supp.2d 730, 741 (W.D.Pa 1998) (citing Rhett v. Carnegie Center Assoc. (In re Carnegie Center Assoc.), 129 F.3d 290, 298 (3d Cir.1997)).  That is, the employer is entitled to establish the job requirements and the plaintiff must offer more than her own opinion that she is qualified for the position in support of her argument that she is qualified.  See In re Carnegie Center Assoc., 129 F.3d at 298.

Defendant does not dispute that plaintiff could establish a prima facie claim for failure to promote.  Rather, defendant argues that it has proffered a nondiscriminatory reason for promoting Winklarek and that no reasonable jury could conclude the proffered reason was pretextual.  Defendant also claims that if plaintiff believed that Winklarek was promoted because of nepotism, then that reason would not be considered discriminatory.  See Pellegrino v. McMillen Lumbar Products Corp., 16 F.Supp.2d 574 (W.D. Pa. 1996).  In this case, however, plaintiff adduced sufficient evidence of pretext that would be sufficient for a jury to conclude that a verdict could be rendered in plaintiff's favor on this claim.  The court finds that plaintiff presented sufficient evidence to allow a factfinder to conclude reasonably that "a discriminatory reason more likely motivated the employer" than the employer's proffered explanation that another candidate was better qualified for the position.  Burdine, 450 U.S. at 256.  Plaintiff adduced sufficient evidence to show that the employer's proffered reason – she was not the best qualified person for the position – could be "unworthy of credence."  Id.  Plaintiff presented evidence demonstrating weaknesses, implausibilities, etc., in defendant's proffered reason to find it "unworthy of credence."  The court concludes that plaintiff satisfied her burden of proving that defendant's reason could be viewed as pretextual under the first prong of the Fuentes test.  The evidence adduced of pretext by plaintiff includes that defendant was aware of plaintiff's superior

performance.  For example, her experience in managing subagents was more extensive than

Winklarek's and her activations greatly exceeded those of all the male employees combined.   In

addition, the defendant's assertion that Winklarek was hired as a branch manager, but defendant

holding him out as an agent manager, also raises doubt as to the reason for the failure to promote.

With respect to whether nepotism would be a proffered reason for which pretext would not be

relevant, the court notes that the proffered reason given by defendant for her not being promoted

was that Winklarek's qualifications were superior.  Thus, defendant itself is not claiming

nepotism as the reason for the failure to promote.  Viewing the evidence in a light most favorable

to plaintiff, the court would conclude that there are sufficient implausibilities and inconsistencies

that could warrant a finding that the plaintiff has met her burden with respect to showing that the

defendant's proffered reason was pretextual.  See Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994).

The court concludes that based upon the record before it, defendant's motion for summary

judgment on this claim cannot be granted.


### C.  Wrongful Termination Claim

There are four elements a plaintiff must prove to establish a prima facie case of wrongful

termination based on sex discrimination.  The plaintiff must prove "(1) he or she is a member of

a protected class; (2) he or she is qualified for the former position; (3) he or she suffered an

adverse employment action; and (4) the circumstances of the plaintiff's termination give rise to

an inference of [sex] discrimination.  Goosby v. Johnson & Johnson Med., Inc., 228 F.d 313,

318-19 (3d Cir. 2000). . . ."  Hilliard v. Morton Buildings, Inc., 195 F.Supp.2d 582, 587 (D. Del.

2002).

With respect to this claim, defendant does not dispute that plaintiff can establish a prima facie case. Like defendant's arguments with respect to the failure to promote claim, defendant asserts that it has proffered legitimate reasons and that plaintiff cannot discredit those reasons by showing pretext. Defendant argues that Winklarek was the general manager at the time plaintiff was terminated and that its proffered reason for terminating plaintiff was the declining sales. Like plaintiff's evidence adduced with respect to pretext in connection with the failure to promote claim, plaintiff has adduced sufficient evidence upon which the jury could conclude that defendant's reasons were pretextual. The declining business argument has implausibilities in that plaintiff had the most significant business generation of any employee and, for the same reasons discussed previously with respect to the failure to promote claim, the court concludes that summary judgment cannot be granted in defendant's favor with respect to this claim.

### D.  Hostile Work Environment Claim

In <u>Weston v. Pennsylvania</u>, 251 F.3d 420 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit noted:

> Hostile work environment harassment occurs when unwelcome sexual conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment. . . .  In order to be actionable, the harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment.

<u>Id.</u> at 425-26 (citations omitted).  In <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469 (3d Cir. 1990), the court of appeals set forth the framework to evaluate a sexual harassment claim:

> We hold that five constituents must converge to bring a successful claim for a sexually hostile work environment under Title VII: (1) the employees suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination

> detrimentally affected the plaintiff; (4) the discrimination would
> detrimentally affect a reasonable person of the same sex in that position;
> and (5) the existence of respondeat superior liability.

Id. at 1482.  The kind of conduct implicated in a sexual harassment claim generally will be of a sexual nature, i.e., insults because of general, unwanted sexual innuendos, physically threatening or humiliating conduct, etc.  See Harris v. Forklift Systems, Inc., 510 US. 17, 23 (1993); Andrews, 895 F.2d at 1485 ("pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally").

Here the hostile work environment plaintiff asserts relates to the pay inequity between Winklarek and her and the failure of defendant to address her complaints.  No allegations of sexual innuendos or any conduct of a physically threatening or humiliating nature were made. The court finds that the evidence adduced by plaintiff, even viewing it in the light most favorable to plaintiff, does not rise to being so pervasive and regular that it altered the conditions of her employment.  The undisputed material facts of record do not support plaintiff's claim for hostile work environment.  The inequity in pay and defendant's ignoring her complaints with respect to the pay inequity are not a sufficient basis for a court to conclude that there was an objectively hostile work environment in this case.  Because plaintiff cannot demonstrate that the discrimination was pervasive and regular or would detrimentally affect a reasonable person of the same sex in that position, no reasonable jury could find in favor of plaintiff on these claims.  The court finds that defendant's motion for summary judgment with respect to the hostile work environment claims under Title VII and the PHRA shall be granted.

**E.  Retaliation Claim Complaint relating to Failure to Promote**

With respect to plaintiff's Title VII retaliation claim, in order to establish a prima facie

27

case of retaliation, plaintiff must demonstrate that: (1) she engaged in protected activity; (2) her employer took adverse action after or contemporaneous with her protected activity; and (3) a causal link exists between her protected activity and the employer's adverse action.  Abramson v. Wm. Patterson College of N.J., 260 F.3d 265, 286 (3d Cir. 2001).  The first prong of the prima facie case requires, at the very least, an informal protest of discriminatory employment practices. Barber v. CSX Dist. Services, 68 F.3d 694, 701-02 (3d Cir. 1995) (citing Summer v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)).  The protest, in whatever medium, must specifically relate to the protected conduct allegedly being infringed.  Barber, 68 F.3d at 701. Here, plaintiff complained to defendant's human relations department about discrimination relating to the failure to promote her rather than Winklarek, which is protected activity.

In this case, plaintiff asserts (and defendant does not dispute) that the plaintiff's termination constituted an adverse action for purposes of plaintiff's prima facie burden. See Weston v. Pennsylvania, 251 F.3d 420, 430-31(2001)(quoting Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 749 (1998)).  Plaintiff satisfied the first two elements of this retaliation claim.

The only remaining issue in dispute with respect to plaintiff's retaliation claim is whether plaintiff can demonstrate a causal link between her protected activity and the adverse action taken by defendant.  With respect to the existence of a causal link between the employee's protected activity and the employer's adverse action, two main factors are relevant: (1) timing or (2) evidence of ongoing antagonism.  Abramson., 260 F.3d at 288 ("Temporal proximity . . . is sufficient to establish the causal link. [A] plaintiff can [also] establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism

in the intervening period.").

The United States Court of Appeals for the Third Circuit has been somewhat ambivalent with respect to whether timing alone is sufficient to satisfy the causation prong of the prima facie case.  See Woodson v. Scott Paper Co., 109 F.3d 913, 920-921 (3d Cir. 1997) ("Temporal proximity is sufficient to establish the causal link."); Jalil v. Avdel Corp., 873 F.2d 701 (3d Cir. 1989) (causal link established where plaintiff discharged two days following employer's receipt of the plaintiff's EEOC claim); but c.f. Quiroga v. Hasbro, Inc., 934 F.3d 497 (3d Cir. 1991) (affirming lower court's determination that the timing of the plaintiff's discharge alone did not raise an inference of retaliation); Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (causation prong not established on timing alone where nineteen months passed following protected activity and adverse employment action; "Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.").  Timing, however, in connection with other types of suggestive evidence, can be sufficient to demonstrate the causal link.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000).  For example, the court of appeals held that timing combined with evidence of vague or inconsistent reasons given by an employer for an employee's termination was sufficient to satisfy the causation prong of the prima facie case.  Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1986); Abramson, 260 F.3d at 289 ("Here, as we found in our discussion of the discrimination claim, [plaintiff] has succeeded in both casting doubt on the reasons [her employer] proffered for her termination, and in demonstrating that those reasons were vague and inconsistent."); see also EEOC v. L.B. Foster Co., 123 F.3d 746, 753-54 (3d Cir.1997), cert.

denied, 522 U.S. 1147 (1998).

In this case the alleged retaliatory adverse action occurred on July 9, 2003, approximately thirty days after the last protected activity engaged in by plaintiff, i.e., the June 2003 complaint to defendant's human resources department.  That timing is suggestive and arguably rises to the level of being "unusually suggestive."  The suggestive timing combined with the doubts cast on defendant's proffered reason for her termination – declining sales – which has been discussed previously provide the basis for this court to conclude for the purposes of this summary judgment motion, viewing the evidence in a light most favorable to plaintiff, that plaintiff adduced sufficient evidence to establish the third element of her prima facie retaliation claim.  Summary judgment cannot be granted in favor of defendant on this claim.

### Conclusion

After reviewing the undisputed material facts of record and any disputed facts of record taken in the light most favorable to the nonmoving party, the court determines that defendant's motion for summary judgment will be granted with respect to plaintiff's claims for hostile work environment under Title VII and the PHRA and will be denied in all other respects.

### ORDER

**AND NOW**, this 22nd day of December 2006, upon consideration of defendant's motion for summary judgment (Doc. No. 18) and the submissions of the parties, **IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part as follows:

30

Summary judgment is **GRANTED** in favor of defendant with respect to plaintiff's hostile work environment claims under Title VII and the PHRA.  In all other respects defendant's motion for summary judgment is **DENIED**.


By the court,


 /s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge


cc: Counsel of Record